IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ABRAHAM CARMICHAEL and KEITH SAWYER | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) ) |
| VILLAGE OF PALATINE, ILLINOIS, TIMOTHY SHARKEY and STEVE BUSHORE, | ) ) ) |
| Defendants. | ) |

Case No. 07 C 5221

Judge Virginia M. Kendall

## MEMORANDUM OPINION AND ORDER

Plaintiffs Abraham Carmichael ("Carmichael") and Keith Sawyer ("Sawyer") filed suit against Defendants Village of Palatine, Illinois ("Palatine"), Detective Timothy Sharkey ("Sharkey") and Police Officer Steve Bushore ("Bushore") based upon a traffic stop. Specifically, Plaintiffs' First Amended Complaint states claims under 42 U.S.C. § 1983 against Sharkey and Bushore for unreasonable search and seizure (Count I), false arrest and unlawful detention (Count II) and excessive force (Count III). Additionally, Carmichael states claims under Illinois law against Sharkey for false imprisonment (Count IV), malicious prosecution (Count V) and intentional infliction of emotional distress (Count VI). Carmichael has also included claims against Palatine for *respondeat superior* liability (Count VII) and indemnification (Count VII). Defendants moved for summary judgment as to all claims. For the reasons stated below, Defendants' Motion for Summary Judgment is granted.

1

## STATEMENT OF UNDISPUTED FACTS

Carmichael and Sawyer met with a woman named Kita and two of her female friends on the south side of Chicago, Illinois on September 15, 2006. (Pl. 56.1 Resp. ¶¶ 1-4.)[1] Carmichael and Kita smoked marijuana and afterward Kita drove Carmichael, Sawyer and the two other females to a motel in Palatine, Illinois. (Pl. 56.1 Resp. ¶¶ 6-8.) When they arrived at the motel, Kita rented a room where all five people drank vodka. (Pl. 56.1 Resp. ¶¶ 9-10.) Additionally, Carmichael and Kita smoked more marijuana in the hotel room. (Pl. 56.1 Resp. ¶ 10.) After an hour and a half, Kita loaned her car to Carmichael and Sawyer so they could drive to a nearby gas station and purchase condoms. (Pl. 56.1 Resp. ¶¶ 11-13.) On the way back to the motel, Carmichael drove while Sawyer sat in the passenger seat. (Pl. 56.1 Resp. ¶¶ 14-15.)

When Carmichael reached the motel's parking lot, he parked the car and began to step out of the car. (Pl. 56.1 Resp. ¶ 16.) After he placed one foot on the ground, he heard someone tell him to "freeze." (Pl. 56.1 Resp. ¶ 17-18.) Carmichael turned and saw Sharkey approximately ten to twelve feet away with his handgun drawn and pointed at him. (Pl. 56.1 Resp. ¶ 18, 20.) Carmichael raised his hands when he realized the person speaking was a police officer. (Pl. 56.1 Resp. ¶¶ 18-19.) Sharkey directed Carmichael to return to the car. (Pl. 56.1 Resp. ¶ 19.) Carmichael returned to the car and placed his hands on the steering wheel. (Pl. 56.1 Resp. ¶¶ 19, 22.) Sharkey approached the car from the driver's side with his handgun put away and asked Carmichael for his driver's license. (Pl. 56.1 Resp. ¶¶ 23-24.) Carmichael explained that he did not have a driver's

---

[1] Citations to "Plaintiffs' Responses to Defendants' Statement of Uncontested Facts" have been abbreviated to "Pl. 56.1 Resp. ¶ __" and citations to "Defendants' Statement of Additional Facts in Support of Summary Judgment" have been abbreviated to "Def. 56.1 Resp. ¶ __."

license but he handed Sharkey his Illinois State Identification card. (Pl. 56.1 Resp. ¶¶ 24-25.) Sharkey took the card back to his vehicle. (Pl. 56.1 Resp. ¶ 25.)

When Sharkey returned, he informed Carmichael that his driver's license had been revoked. (Pl. 56.1 Resp. ¶ 28.) Sharkey then asked for the vehicle's insurance and registration. Carmichael responded that he did not know where the documents were because the car did not belong to him. (*Id.*) At that point, Sharkey ordered Carmichael to step out of the car. (Pl. 56.1 Resp. ¶ 29.) Sharkey brought Carmichael to the rear of the car while Sawyer remained inside. (Pl. 56.1 Resp. ¶ 30.) Without Carmichael's consent, Sharkey conducted a search of his's person and found a bag of marijuana in the pocket of his jeans. (Pl. 56.1 Resp. ¶ 31; Def. 56.1 Add'l Resp. ¶ 10.) After finding the marijuana, Sharkey handcuffed Carmichael's hands behind his back. (Pl. 56.1 Resp. ¶ 32.) At that time, another police officer, Bushore, arrived on the scene. (Pl. 56.1 Resp. ¶¶ 33, 57.)

After he handcuffed Carmichael, Sharkey ordered Sawyer to get out of the car. (Pl. 56.1 Resp. ¶ 34.) Sharkey then conducted a pat-down search of Sawyer. (Pl. 56.1 Resp. ¶ 35.) Sawyer did not consent to the search. (Def. 56.1 Add'l Resp. ¶ 10.) After the search, Sharkey handcuffed Sawyer. (*Id.*) When Sawyer asked why the car had been pulled over, Sharkey responded that he pulled them over because the car did not have a front license plate and because the car had tinted front windows. (Pl. 56.1 Resp. ¶¶ 35-36.) Kita's car did not have a front license plate because it only had a single temporary plate on its rear end and it had tinted front windows. (Pl. 56.1 Resp.¶37.)[2] Sharkey now admits that he did not make the traffic stop because of tinted front

---

[2] Def. 56.1 ¶ 37 states: "The vehicle that the plaintiffs were in had a driver's side tinted window and no front plate. (Ex. 4: Photo of Tinted Window; Ex. 5: Partial Photo of Front of Car)." Plaintiffs responded: "Denied. The statement is unsupported by sworn testimony and the photographs referenced in the statement do not show what is asserted in the statement." Pl. 56.1 Resp. ¶ 37.

With respect to the tinted front windows, the Court finds that the photographs submitted show that the front

3

windows or the lack of a front license plate. (Pl. 56.1 Resp. ¶ 52.) Instead, Sharkey states that he stopped Carmichael because the vehicle did not have operational tail or brake lights at the time he made the stop. (Def. 56.1 Add'l Resp. ¶¶ 1-2.)

After Sharkey had handcuffed Carmichael and Sawyer, he left them with Bushore and searched the interior of the car. (Pl. 56.1 Resp. ¶ 38.) Sharkey found a black plastic bag inside the car. (Pl. 56.1 Resp. ¶ 39.) He removed the bag from the car, searched it, and found a large amount of crack cocaine inside. (Pl. 56.1 Resp. ¶ 40.) Carmichael and Sawyer claimed that they did not know who owned the bag or what was inside of it. (Pl. 56.1 Resp. ¶ 39.) After he found the crack cocaine inside of the black bag, Sharkey put Carmichael into his police car and then searched Sawyer again. (Pl. 56.1 Resp. ¶¶ 41-42.) During this search, Sharkey briefly pulled the front and

---

windows of Kita's car had a tinted driver's side window. *See* Def. 56.1 Ex. 4; Def. Reply in Support of Their Motion for Summary Judgment Ex. 4 (higher quality photo clearly showing tint on driver's side window). Furthermore, Carmichael's testimony supports the assertion that the two-door sedan had tinted side windows:

> Q: Did you see Officer Sharkey during those two minutes open up the center console between the seats?
>
> A: I can't see in there because there's tint on the window.
>
> Q: Okay. Was there tint on the rear and the sides of that car?
>
> A: I can't honestly answer that, but I do know there was tint on the windows, and I couldn't see on the inside.
>
> Q: Okay. I understand your answer to mean that there was tint on the rear window, and that's why you couldn't see inside?
>
> A: I didn't say the rear window . . . . I just know there was tint on the windows.

Carmichael Dep. 76:16-77:14. Regardless, the photographs submitted to the Court show that Kita's car had a tinted front window on the driver's side.

With respect to the front license plate, the partial photograph of the car's front end does not show a place where a license plate would hang and Carmichael testified in his deposition that the car only had a temporary license plate on the rear. *See* Carmichael Dep. 73:5-6 ("[T]he car had a temporary tag on it, so we shouldn't need no front plate."); *see also* Sawyer Dep. 32:7-17 (testifying that the car only had a temporary license plate). Therefore, the Court finds Defendants' assertions in Def. 56.1 Resp. ¶ 37 supported by sworn testimony and undisputed by anything else in the record.

back waistband of Sawyer's underwear away from Sawyer's body to shine a flashlight down his pants. (Pl. 56.1 Resp. ¶ 43.) At Sharkey's direction, Sawyer then removed his shoes. (Pl. 56.1 Resp. ¶ 44.) After Sharkey searched Sawyer's shoes, he handed them back and informed Sawyer that he was free to leave but he was going to arrest Carmichael. (Pl. 56.1 Resp. ¶¶ 44-45.)

After Sawyer left the scene, Sharkey drove Carmichael to the Palatine Police Station. (Pl. 56.1 Resp. ¶¶ 45-46.) Sharkey had Kita's car towed to Palella's Auto Body in Rolling Meadows, Illinois, where it remains. (Pl. 56.1 Resp. ¶ 47.) An investigator for the Cook County Public Defender's Office, James Madden, later examined the vehicle and found its tail lights and brake lights to be operational. (Def. 56.1 Add'l Resp. ¶ 3.)

When Sharkey and Carmichael arrived at the police station, Sharkey strip-searched Carmichael. (Pl. 56.1 Resp. ¶ 48.) Ultimately, Carmichael received traffic citations for driving with a revoked driver's license and driving a vehicle without tail lights or brake lights in violation of the Illinois Motor Vehicle Code. (Pl. 56.1 Resp. ¶ 49.) Carmichael did not receive a traffic citation for not having a front license plate or for having a tinted driver's side window. (Pl. 56.1 Resp. ¶ 51.) Additionally, Carmichael was charged with possession of a controlled substance with intent to deliver, possession of a controlled substance, possession of drug paraphernalia and the unlawful possession of cannabis. (Pl. 56.1 Resp. ¶ 50.)

At Carmichael's bond hearing on September 16, 2008, the judge set his bond at $100,000. (Pl. 56.1 Resp. ¶ 53.) Because Carmichael did not have the ability to post bond at that time, he remained in the Cook County Jail until January 17, 2007, the date of a hearing on his Motion to Suppress and Quash Arrest. (Pl. 56.1 Resp. ¶ 54.) At the hearing, Sharkey testified that he had probable cause to stop Carmichael's vehicle because the vehicle did not have operational tail lights

or brake lights. (Def. 56.1 Add'l Resp. ¶ 1.) Based upon Madden's investigation that revealed operational tail lights and brake lights, the judge found that Sharkey lied about whether the car had operational tail lights and brake lights on the night he made the traffic stop. (Pl. 56.1 Resp. ¶ 55; Def. 56.1 Add'l Resp. ¶ 5.) Accordingly, the judge granted Carmichael's Motion to Suppress and Quash Arrest. (Pl. 56.1 Resp. ¶ 55.) On that same date, the Cook County State's Attorney moved to *nolle prosequi* the charges against Carmichael. (Pl. 56.1 Resp. ¶ 56.)

On September 14, 2007, Carmichael and Sawyer initiated this lawsuit against Sharkey, Bushore and the Village of Palatine. Carmichael and Sawyer state claims against Sharkey and Bushore under 42 U.S.C. § 1983 for unreasonable search and seizure, false arrest/unlawful detention and excessive force. Carmichael also states claims against Sharkey under Illinois law for false imprisonment, malicious prosecution and intentional infliction of emotional distress. Finally, Carmichael states claims against Palatine for *respondeat superior* liability and indemnification for the causes of action arising under Illinois law.

## **STANDARD OF REVIEW**

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether a genuine issue of fact exists, the Court must view the evidence and draw all reasonable inferences in favor of the party opposing the motion. *Bennington v. Caterpillar Inc.*, 275 F.3d 654, 658 (7th Cir. 2001); *see also Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255 (1986). However, the Court will "limit its analysis of the facts on summary judgment to evidence that is properly identified and supported in the parties' [Local Rule 56.1] statement."

6

*Bordelon v. Chicago Sch. Reform Bd. of Trustees*, 233 F.3d 524, 529 (7th Cir. 2000). Where a proposed statement of fact is supported by the record and not adequately rebutted, the court will accept that statement as true for purposes of summary judgment. An adequate rebuttal requires a citation to specific support in the record; an unsubstantiated denial is not adequate. *See Albiero v. City of Kankakee*, 246 F.3d 927, 933 (7th Cir. 2001); *Drake v. Minnesota Mining & Mfg. Co.*, 134 F.3d 878, 887 (7th Cir. 1998) ("'Rule 56 demands something more specific than the bald assertion of the general truth of a particular matter[;] rather it requires affidavits that cite specific concrete facts establishing the existence of the truth of the matter asserted.'").

## DISCUSSION

### I. Waiver of Claims

As a preliminary matter, the Court notes that Plaintiffs' Response to Defendants' Motion for Summary Judgment ("Response Brief") contains very little factual or legal support. Plaintiffs' counsel failed to make any reference to the false arrest/unlawful detention claims of Carmichael or Sawyer (Count II) in their Response Brief. The entirety of Plaintiffs' argument in support of their excessive force claims consists of a conclusory statement: "pointing a gun at plaintiffs without justification was excessive." Plaintiffs' counsel further failed to cite a single case in support of Carmichael's state law claims for false imprisonment, malicious prosecution, or intentional infliction of emotional distress.

Failure to properly develop an argument with citation to relevant legal authority constitutes a waiver. *See, e.g., Kramer v. Banc of Am. Sec., LLC*, 355 F.3d 961, 964 n.1 (7th Cir. 2004) ("We have repeatedly made clear that perfunctory and underdeveloped arguments, and arguments that are unsupported by pertinent authority, are waived (even when those arguments raise constitutional

7

issues)."); *United States v. Amerson*, 185 F.3d 676, 689 (7th Cir. 1999) ("[G]iven our adversarial system of litigation, it is not the role of this Court to research and construct legal arguments open to the parties, *especially when they are represented by counsel*.") (emphasis added). The Court recognizes that a party opposing summary judgment does not need to cite additional legal authority, provided that the argument depends on the application of facts to the legal standard already presented in the moving party's brief. *See Davis v. Carter*, 452 F.3d 686, 692 (7th Cir. 2006). Yet, with respect to Plaintiffs' claims for false arrest and excessive force and Carmichael's claims for false imprisonment, malicious prosecution and intentional infliction of emotional distress, Plaintiffs' Response Brief fails to raise any arguments that depend on the application of facts to the legal standards already presented to the Court.

Instead, Plaintiff's Response Brief contains perfunctory arguments unsupported by pertinent authority. Because Plaintiffs failed to develop his argument regarding excessive force and failed to cite to any authority to support it, he has waived his argument. More importantly, Plaintiffs failed to rebut that the officer's weapon was drawn for only a brief moment, was returned to its holster immediately and that the officer was twenty feet away at the time. All further interactions after the announcement of "Freeze" between the officer and the Plaintiffs occurred when the officer's gun was holstered. Plaintiffs have failed to rebut that position factually and have failed to develop any legal argument to rebut that this brief, momentary show of force was not excessive under the Fourth Amendment. *See e.g., Williams v. May*, 872 F.2d 190, 194 (7th Cir. 1989) (police officer pointing gun at person during an arrest is not, in and of itself, actionable without more), *overruled on other grounds as stated in Muhammad v. Chicago Bd. of Educ.*, No. 94 C 522, 1995 WL 89013 (N.D. Ill. Feb. 24, 1995). Because they have failed to support their argument that this interaction was

8

excessive, the Court can only deny the claim as waived because the Court cannot determine whether the force was excessive in relation to the danger Plaintiffs posed.

Similarly, Plaintiffs fail to rebut Sawyer's unlawful detention both factually and legally. Plaintiffs fail to rebut that Sawyer was only momentarily detained at the scene and was allowed to leave within minutes of the stop. Whether this de minimus detention rose to the level of unlawful of unlawful detention is further not developed by Plaintiffs' counsel. This failure to place the time period in dispute and to fully develop the argument that this momentary detention was unconstitutional constitutes waiver.

In short, all of Plaintiffs' state law claims are waived due to counsel's failure to address them, develop any argument to support them, and to present any cases in support of his position. The Court further notes that the record before the Court reflects a pattern of behavior by Plaintiff's counsel consistent with this lack of preparation and truncated brief. Counsel for Plaintiff failed to do any work on his case during the court-ordered discovery period and then sought relief from the Court by seeking an emergency extension of time to do the work he was expected to do during the discovery period. In all, the Court granted Plaintiffs three extensions of time to complete his work on a case that he filed over one year ago. In spite of those extensions, Plaintiffs filed a four page response to Defendants' Motion for Summary Judgment. This failure to develop the arguments in response to the summary judgment motion constitutes waiver as to all of the state law claims and as to the federal excessive force and detention claims. As for the false arrest claims, Plaintiffs provided four case cites. Although those federal claims were barely addressed, the Court will not deem them waived and addresses them below.

**II. Section 1983 Claim**

Actions under 42 U.S.C. § 1983 provide redress for constitutional violations committed under color of state law. *See* 42 U.S.C. § 1983. To recover under § 1983, plaintiffs must show that: "1) they were deprived of a right secured by the Constitution or laws of the United States, and 2) the deprivation was visited upon them by a person or persons acting under color of state law." *McKinney v. Duplain*, 463 F.3d 679, 683 (7th Cir. 2006). Even if a plaintiff states a valid claim under § 1983, an individual acting under color of state law may assert qualified immunity. "The doctrine of qualified immunity shields government officials against suits arising out of their exercise of discretionary functions as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Id.* at 683-84. Therefore, a two-part test for § 1983 claims and qualified immunity exists:

> First, a court must decide whether the facts, when viewed in the light most favorable to the plaintiff, indicate that the officer's conduct violated some constitutional right of the plaintiff. If so, the court must determine whether the constitutional right violated was "clearly established" at the time of the alleged violation. Unless the answer to both questions is "yes," a government official is entitled to qualified immunity.

*Id.* at 684 (citations omitted). Therefore, this Court begins its analysis by determining if Carmichael and Sawyer suffered violations of their constitutional right to be free from unreasonable search and seizure under the Fourth Amendment.

A. Traffic Stop

Even when the police detain individuals during a car stop, even briefly, that detention constitutes a seizure of persons within the meaning of the Fourth Amendment. *See Whren v. United States*, 517 U.S. 806, 809-10 (1996). The decision to stop a vehicle for a traffic violation must be objectively reasonable. *See id.* at 810. The police officer's actions are reasonable if she has probable cause to believe that a traffic violation has occurred. *See id.* "An officer has probable

10

cause for a traffic stop when she has an 'objectively reasonable' basis to believe a traffic law has been violated." *United States v. McDonald*, 453 F.3d 958, 961-62 (7th Cir. 2006). Although probable cause requires more than a bare suspicion of criminal activity, it does not require evidence sufficient to support a conviction. *See Holmes v. Vill. of Hoffman Estates*, 511 F.3d 673, 679 (7th Cir. 2007). "The Fourth Amendment's concern with 'reasonableness' allows certain actions to be taken in certain circumstances, *whatever* the subjective intent." *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004) (emphasis in original).

Because courts assess probable cause objectively, "a court looks at the conclusions that the arresting officer reasonably might have drawn from the information known to him rather than his subjective reasons for making the arrest." *Holmes*, 511 F.3d at 679. Even when a police officer's subjective basis for making a traffic stop is not supported by probable cause, the police officer does not violate the Fourth Amendment if an objectively reasonable alternative basis for making the stop existed. *See Williams v. Rodriguez*, 509 F.3d 392, 399 (7th Cir.2007) ("[T]he Fourth Amendment's focus on reasonableness dictates an objective analysis, whereby, 'the fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action.'") (*quoting Devenpeck*, 543 U.S. at 153). In *Williams*, a police officer pulled behind a car that had stopped on Lake Shore Drive in Chicago. *Williams*, 509 F.3d at 396. After administering field sobriety tests on the motorist, the officer placed the motorist under arrest for driving under the influence of alcohol. *Id.* at 397. After a bench trial in state court, the motorist was found not guilty of driving under the influence and obstructing traffic. *Id.* at 398. In the ensuing § 1983 action for false arrest, the motorist argued that probable cause did not exist for

11

the driving under the influence charge. *Id.* at 400. In rejecting his claim, the *Williams* Court specifically found:

> because the facts known to the [officer], when viewed objectively, would have provided a reasonable officer with probable cause to believe [the motorist] had [obstructed traffic], it was within his authority, without violating the Fourth Amendment, to arrest [the motorist] for that violation. *Due to the objective nature of the probable cause analysis, it is of no consequence that [the officer's] subjective reason for making the arrest was driving under the influence rather than [obstructing traffic].*

*Id.* at 401 (emphasis added).

Here, Carmichael and Sawyer claim that because Sharkey stated that he made the traffic stop because the car did not have operational tail lights or brake lights, he did not have probable cause to make the stop. In support of their contention, they point to the fact that the judge found that Sharkey lied about his reasons for stopping the car. However, the undisputed facts show that at the time Sharkey made the traffic stop, he knew that the car that Carmichael had been driving had tinted front windows and no front license plate because he cited those reasons to Carmichael and Sawyer when they asked why he stopped their car and those statements are supported by the photos of the car that are in evidence. Under Illinois law, operating a vehicle with tinted front windows or no front licence plate violates the Illinois Motor Vehicle Code. *See* 625 ILCS 5/12-503(b) (prohibiting tinted front windows); 625 ILCS 5/3-413(a) (requiring front and back license plates). Although Sharkey now states that he stopped the car only because it did not have operational tail lights or brake lights, because of the objective nature of the probable cause analysis, his subjective reason for making the traffic stop is irrelevant to a claim for unreasonable search and seizure. Even if the reason for making the stop varied between the two court proceedings, the undisputed facts show that he had actual knowledge of the car's tinted front window and lack of front license plates. Based on

12

that knowledge, Sharkey could have reasonably drawn the conclusion that the vehicle had violated the Illinois Motor Vehicle Code.

Furthermore, he could have reasonably drawn the conclusion that Carmichael's vehicle violated the Illinois Motor Vehicle Code based on the vehicle's lack of a front license plate. The undisputed facts show that the vehicle Carmichael drove that night had only a rear license plate. Although the temporary license plates now provide an explanation for not having both front and rear plates, a police officer who sees a vehicle on the road without a front license plate has probable cause to believe that the motorist has violated the Illinois Motor Vehicle Code. Because the undisputed facts show that Sharkey had an objectively reasonable basis for believing that Carmichael's car had violated Illinois traffic laws, Sharkey had probable cause to make the traffic stop. Accordingly, the undisputed facts show that Sharkey did not violate the constitutional rights of Carmichael or Sawyer when he initially stopped the car.

B. Arrest of Carmichael

Once Sharkey stopped the car and obtained identification from Carmichael, he discovered that Carmichael's driver's license had been revoked. At that point, Sharkey ordered Carmichael out of the vehicle and placed him under arrest.

"An essential predicate to any § 1983 claim for unlawful arrest is the absence of probable cause." *Kelley v. Myler*, 149 F.3d 641, 646 (7th Cir. 1998). "If probable cause to arrest is found to exist, 'it is an absolute defense to any claim under § 1983 for wrongful arrest.'" *Williams*, 509 F.3d at 398 (*quoting Mustafa v. City of Chicago*, 442 F.3d 544, 547 (7th Cir. 2006)). "If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." *Atwater v. City*

*of Lago Vista*, 532 U.S. 318, 354 (2001); *see also Williams*, 509 F.3d at 400-01 (holding that under the Fourth Amendment, police could arrest motorist who violated the Illinois Motor Code by improperly pulling over to the side of the road); *Chortek v. City of Milwaukee*, 345 F.3d 740, 745 (7th Cir. 2004) ("Arrest for a minor, non-jailable offense does not violate the Fourth Amendment.").

Here, Sharkey placed Carmichael under arrest after he realized that Carmichael had been operating a vehicle on a revoked driver's license. Once he discovered that Carmichael did not have a valid driver's license, Sharkey had probable cause to arrest Carmichael for that violation. Therefore, Sharkey did not violate Carmichael's constitutional rights when he arrested Carmichael.

C. Search of Carmichael

After Sharkey arrested Carmichael, he conducted a search of Carmichael's person without consent. During the course of that search, Sharkey found marijuana in Carmichael's pocket. Carmichael contends that search was unreasonable under the Fourth Amendment.

One exception to the Fourth Amendment's prohibition of warrantless searches is the search incident to arrest. *See Chimel v. California*, 395 U.S. 752 (1969). "Under this exception, police officers may, incident to arrest, conduct a plenary search of the arrestee's person . . . ." *Peals v. Terre Haute Police Dep't*, 535 F.3d 621, 627 (7th Cir. 2008). "When officers have probable cause to believe that a person has committed a crime in their presence, the Fourth Amendment permits them to make an arrest, and to search the suspect in order to safeguard evidence and ensure their own safety." *Virginia v. Moore*, — U.S. —, 128 S.Ct. 1598, 1608 (2008). "Searches incident to arrest are valid in order to find weapons and to search for and seize any evidence on the arrestee's person in order to prevent concealment and to preserve evidence for trial." *United States v. Thomas*, 512 F.3d 383, 387 (7th Cir. 2008). "Where there is a lawful custodial arrest, a full search of the

person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a reasonable search under that Amendment." *Id.*

The Court has already determined that Sharkey made a lawful custodial arrest of Carmichael once he determined that Carmichael had operated a vehicle under a revoked driver's license. Because the arrest was lawful, Sharkey was entitled to conduct a search of Carmichael's person as a search incident to the arrest. Accordingly, Sharkey's search of Carmichael's person did not violate Carmichael's rights under the Fourth Amendment.

D. Search of the Vehicle

After Sharkey found marijuana on Carmichael's person, he performed a search of the automobile. Carmichael claims that the search of the vehicle violated his constitutional rights under the Fourth Amendment.

"Under the automobile exception to the warrant requirement, a law enforcement officer need not have a warrant to search a vehicle when 'there is probable cause to believe the search will uncover contraband or evidence of the crime.'" *United States v. Hines*, 449 F.3d 808, 814 (7th Cir. 2006) (*quoting United States v. Pittman*, 411 F.3d 813, 817 (7th Cir. 2005)). "Probable cause to conduct a search of this type exists if, given the totality of the circumstances, there is a 'fair probability that contraband or evidence of a crime will be found in the vehicle.'" *United States v. Johnson*, 383 F.3d 538, 545 (7th Cir. 2004) (*quoting Illinois v. Gates*, 462 U.S. 213, 238 (1983)).

In *Johnson*, as in this case, officers performed a search incident to arrest following a traffic stop. *Johnson*, 383 F.3d at 545-46. During the search, officers found controlled substances on the driver. *Id.* at 546. The discovery of a banned substance on the driver's person during the search incident to the arrest gave officers probable cause to search the vehicle, because "the officer had a

15

reasonable basis for believing that more drugs or other illegal contraband may have been concealed inside." *Id.* (*citing United States v. Young*, 38 F.3d 338, 340 (7th Cir. 1994)).

When Sharkey's legal search of Carmichael revealed that Carmichael possessed controlled substances, Sharkey had a reasonable basis for believing that more drugs or other illegal contraband may have been concealed inside the vehicle. Therefore, Sharkey's search of the vehicle did not violate Carmichael's constitutional rights under the Fourth Amendment. Because the undisputed facts show that Carmichael did not have his right to be free of unreasonable searches and seizures violated, Defendants are entitled to summary judgment on Count I of Carmichael's First Amended Complaint.

E. Search of Sawyer

Sawyer, a passenger in the vehicle Carmichael drove, claims that Sharkey subjected him to an unreasonable search after Sharkey found crack cocaine inside the vehicle.

Certainly, the Court is aware that an individual's "mere propinquity to others independently suspected of criminal activity" does not allow an officer to search that person. *Ybarra v. Illinois*, 444 U.S. 85, 91 (1979) (Officers executing a warrant inside of a tavern lacked probable cause to search all patrons present within the tavern). *Id.* However, with respect to automobiles, law enforcement officers have probable cause to search automobile passengers when the officer can infer a common enterprise among the occupants of the car. *See United States v. Reed*, 443 F.3d 600, 604 (7th Cir. 2006). The reasoning supporting this search is that a car passenger may be engaged in a "common enterprise with the driver, and have the same interest in concealing the fruits of the evidence of their wrongdoing." *Id.* (*quoting Maryland v. Pringle*, 540 U.S. 366, 368 (2003). For example, in *Pringle*, the quantity of drugs inside the car indicated a likelihood of drug dealing, "an

16

enterprise to which a dealer would be unlikely to admit an innocent person with the potential to furnish evidence against him." *Pringle*, 540 U.S. at 373.

The undisputed facts here show that Sharkey found a large quantity of crack cocaine within the center console of the vehicle, an area that both Carmichael and Sawyer could easily access. Sharkey could have reasonably inferred that Carmichael and Sawyer each possessed the contraband as part of a common enterprise. Therefore, Sharkey had probable cause to support his search of Sawyer after he found the crack cocaine inside of the vehicle. Because Sharkey had probable cause to search Sawyer, Sharkey's search of Sawyer did not violate his constitutional rights. Accordingly, with respect to Sawyer's claim in Count I of the First Amended Complaint, Defendants are entitled to summary judgment.

## CONCLUSION AND ORDER

Because the undisputed facts show that the officers did not violate the constitutional rights of Plaintiffs, Defendants' motion for summary judgment is granted .


So ordered.

_____
Virginia M. Kendall, United States District Judge
Northern District of Illinois

Date: December 4, 2008