UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ABRAHAM CARMICHAEL and KEITH SAWYER, )
)
                               Plaintiffs, )   07 C 5221
)
    vs. )   Judge Feinerman
)
VILLAGE OF PALATINE, TIMOTHY SHARKEY, )
and STEVE BUSHORE, )
)
                               Defendants. )

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Abraham Carmichael and Keith Sawyer brought this action against the Village of Palatine and two of its police officers, Timothy Sharkey and Steve Bushore, alleging Fourth Amendment violations under 42 U.S.C. § 1983 and related state law claims. Two years ago, Defendants were granted summary judgment on all claims. 2008 WL 5111174 (N.D. Ill. Dec. 4, 2008). The Seventh Circuit reversed and remanded with respect to two Fourth Amendment claims: (1) the validity of the initial seizure of Carmichael and Sawyer; and (2) Sawyer's claim that the manner of the search of his person was unreasonable. 605 F.3d 451 (7th Cir. 2010). Finding that the unreasonable search claim "was litigated in a perfunctory manner before the district court," the Seventh Circuit left open the possibility that Defendants, on remand, could again seek summary judgment on that claim. *Id*. at 460. Defendants have accepted the Seventh Circuit's invitation and moved for summary judgment. The motion is denied.

The Seventh Circuit described the events pertinent to the unreasonable search claim as follows. After handcuffing and conducting a pat-down search of Sawyer, Officer Sharkey found

"a bag containing a significant quantity of crack cocaine" when searching the interior of the vehicle in which Sawyer and Carmichael were riding. *Id.* at 454. Officer Sharkey

> then returned to Mr. Sawyer and conducted a more complete search, the details of which are not in significant dispute. Officer Sharkey pulled Mr. Sawyer's pants partially down and pulled his underwear away from his body. Officer Sharkey shone a flashlight into Mr. Sawyer's pants and, when the search was complete, informed Mr. Sawyer that he was free to go.

*Ibid*.

The parties' recent summary judgment filings provide further details, which are set forth here with all genuine factual disputes resolved in Sawyer's favor. The events occurred in the parking lot of a Motel 6, near Dundee Road and Kennedy Drive in Palatine. During the search of Sawyer's person, Officer Sharkey unbuttoned Sawyer's pants and lowered them to mid-thigh, pulled Sawyer's underwear out, and shined a flashlight on and looked at Sawyer's genitals. Officer Sharkey then told Sawyer to bend over; Sawyer complied, and Sharkey proceeded to pull out Sawyer's underwear and shine a flashlight on and looked at his buttocks. Officer Bushore observed these events, as did Carmichael and two female passersby. Sharkey told Sawyer to go, and Sawyer was neither arrested nor charged with any crime.

Defendants contend that they are entitled to qualified immunity on Sawyer's claim that the manner of the search was unreasonable. "The doctrine of qualified immunity protects government officials from liability for civil damages when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *McAllister v. Price*, 615 F.3d 877, 881 (7th Cir. 2010) (citing *Pearson v. Callahan*, 555 U.S. 223 (2009)). "When confronted with a claim for qualified immunity, [the court] must address two questions: whether the plaintiff's allegations make out a deprivation of a constitutional right, and

whether the right was clearly established at the time of defendant's alleged misconduct." *Ibid*. (citing *Wheeler v. Lawson*, 539 F.3d 629, 639 (7th Cir. 2008)).

The first question is whether, construing the record in the light most favorable to Sawyer, Officer Sharkey's public, intrusive search of Sawyer's person violated the Fourth Amendment. Whether a search complies with the Fourth Amendment turns on "the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Campbell*, 499 F.3d at 716 (citing *Bell v. Wolfish*, 441 U.S. 520, 559 (1979)). In *Campbell*, the Seventh Circuit considered the Fourth Amendment validity of a comparably intimate search conducted in a public setting. Campbell was arrested in front of his friend's house on suspicion of marijuana possession. After an initial patdown revealed no weapons or contraband, two officers took Campbell into the house's backyard, where one of the officers "undid Campbell's belt buckle, pulled his pants partway down, and had him lean forward." *Id*. at 715. The officer then "separated Campbell's buttocks and did a 'visual inspection' so as to 'make sure he had nothing shoved into his anal area.'" *Ibid*. Campbell was issued a summons, but not placed under custodial arrest. Campbell's friend watched the search from his kitchen window, and the backyard was visible from other homes.

The jury returned a defense verdict, and the district court denied Campbell's motion for judgment as a matter of law under Fed. R. Civ. P. 50(a). The Seventh Circuit reversed and remanded with instructions to enter judgment in Campbell's favor on the unreasonable search claim. The court's reasoning is worth quoting at length:

> The question here is … whether the search performed on Campbell, involving as it did public nudity and exposure of intimate body parts, was reasonable. In our view, it was not, and no reasonable jury could have found otherwise. We have previously recognized that strip searches involving the visual inspection of the anal area are demeaning,

dehumanizing, undignified, humiliating, terrifying, unpleasant, embarrassing, repulsive, and signify degradation and submission. [citation omitted]. The invasion of privacy rights at issue here is at its highest, no matter where the search was conducted. Having decided, legitimately, to conduct this type of search, the police inexplicably did not even afford Campbell the dignity of doing it in a private place. (For example, they could have taken him briefly to the lock-up facility. …)

The Supreme Court noted in *Illinois v. Lafayette*, 462 U.S. 640, 645 (1983), in the course of discussing inventory searches incident to booking and jailing:

> Police conduct that would be impractical or unreasonable—or embarrassingly intrusive—on the street can more readily—and privately—be performed at the station. For example, the interests supporting a search incident to arrest would hardly justify disrobing an arrestee on the street, but the practical necessities of routine jail administration may even justify taking a prisoner's clothes before confining him, although that step would be rare.

Courts across the country are uniform in their condemnation of intrusive searches performed in public. [citations omitted].

There is no dispute in this record that the search was conducted in an area where Campbell's friend was able to watch and where others could have done so as well. Moreover, there was nothing before the jury that suggested any conceivable exigency that could be met only by strip searching Campbell in public, on the spot. In our view, those factors conclusively tip the balance under *Wolfish* in Campbell's favor.

*Campbell*, 499 F.3d at 718-19 (internal quotation marks omitted).

Under the law set forth in *Campbell*, a reasonable jury could conclude that Officer Sharkey's search of Sawyer—assuming it occurred as Sawyer claims—violated the Fourth Amendment. Officer Sharkey pulled down Sawyer's pants, pulled out his underwear, and visually inspected (with the aid of a flashlight) Sawyer's genitals and buttocks. The search was conducted in a public area, where Carmichael and two female passerby were able to watch and where others could have watched as well. Defendants do not claim that exigent circumstances

required that the search be conducted in a public area. It would be an impermissible departure from *Campbell* to hold that the manner of this search complied with the Fourth Amendment.

Defendants attempt to distinguish *Campbell* on the ground that Campbell's anal cavity was searched while Sawyer's was not. The premise underlying this argument, which Defendants twice make explicit, is that a search is not a "strip search" unless an intimate body cavity is examined. *See* Doc. 139 at 4-5; Doc. 151 at 3-4. The premise is incorrect. In *Safford Unified Sch. Dist. v. Redding*, 129 S. Ct. 2633 (2009), the Supreme Court observed that "strip search is a fair way to" describe a search in which an individual was compelled to "remove her clothes down to her underwear, and then 'pull out' her bra and the elastic band on her underpants," allowing school officials "to see her necessarily exposed breasts and pelvic area to some degree." *Id*. at 2641. The Fourth Circuit likewise has recognized that a body cavity search is not a *sine qua non* of a strip search. *See Amaechi v. West*, 237 F.3d 356, 363 (4th Cir. 2001) (citing cases); *see also Foster v. City of Oakland*, 675 F. Supp. 2d 992, 1003 (N.D. Cal. 2009) ("there is no reason for this court to conclude that a visual inspection of [arrestee]'s underwear was not a 'strip search'"); *People v. Mitchell*, 768 N.Y.S.2d 204, 206-07 (N.Y. App. Div. 2003) ("we have no difficulty in holding that a strip search, conducted in a *public place*, regardless of whether it includes a search of the arrested person's body cavities, is not justified or reasonable absent the most compelling circumstances, that is, circumstances that pose potentially serious risks to the arresting officer or others in the vicinity") (quoted in *Campbell*, 499 F.3d at 719). And while the characterization of a search under the Fourth Amendment is a federal issue, *see Amaechi*, 237 F.3d at 363, it bears mention that the events described by Sawyer plainly qualify as a "strip search" under Illinois law. *See* 725 ILCS 5/103-1(d) ("'Strip search' means having an arrested

person remove or arrange *some or all* of his or her clothing so as to permit a visual inspection of the genitals, buttocks, … *or* undergarments of such person.") (emphasis added).

The second question in the qualified immunity analysis is whether the Fourth Amendment right at issue "was clearly established" on September 15, 2006, the date of the search. *McAllister*, 615 F.3d at 881. In 1995, the Seventh Circuit observed that "there are several cases which suggest that qualified immunity would not exist for a strip search conducted in public view." *Kraushaar v. Flanigan*, 45 F.3d 1040, 1054 n.7 (7th Cir. 1995). In support, the Seventh Circuit cited *Logan v. Shealy*, 660 F.2d 1007 (4th Cir.1981), which three decades ago held, "We think, as a matter of law, no police officer in this day and time could reasonably believe that conducting a strip search in an area exposed to the general view of persons known to be in the vicinity—whether or not any actually viewed the search—is a constitutionally valid governmental invasion of [the] personal rights that [such a] search entails." *Id*. at 1014 (internal quotation marks omitted); *see also Amaechi*, 237 F.3d at 364 ("we have repeatedly emphasized the necessity of conducting a strip search in private" and that "absent clear justification or exigent circumstances, an officer is not allowed to strip an arrestee on a public street pursuant to a search incident to an arrest").

The Seventh Circuit made the same point in *Campbell*, citing *Logan*, *Amaechi*, and four other pre-2006 cases for the proposition that "[c]ourts across the country are uniform in their condemnation of intrusive searches performed in public." 499 F.3d at 719. As Defendants note, *Campbell* was decided after Officer Sharkey's search of Sawyer, so it cannot clearly establish Fourth Amendment law for purposes of denying qualified immunity in this case. But *Campbell* is relevant here not because it clearly established a previously unsettled question of law, but because it found an existing consensus, dating back a quarter century, that the Fourth

Amendment prohibits public strip searches, absent exigent circumstances not present here. Defendants cite no case authority disturbing the consensus. Accordingly, because the right at issue was clearly established in September 2006, Defendants are not entitled to qualified immunity on Sawyer's unreasonable search claim. *See Crosetto v. State Bar of Wis.*, 12 F.3d 1396, 1404 (7th Cir. 1993) ("For the qualified immunity defense to fail, what is required is a sufficient consensus, based on all relevant case law, indicating that the official's conduct was unlawful.") (internal quotation marks omitted).

Officer Bushore seeks summary judgment on an alternative ground. Sawyer's Fourth Amendment claim against Officer Bushore alleges that he failed to intervene to stop the search conducted by Officer Sharkey. To prevail on that claim, Sawyer must show that Officer Bushore had reason to know that "[a] constitutional violation has been committed by another law enforcement official; *and* [that Bushore] had a realistic opportunity to intervene to prevent the harm from occurring." *Windle v. City of Marion*, 321 F.3d 658, 663 (7th Cir. 2003) (quoting *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994)).

Defendants assert that Sawyer failed to adduce evidence that Bushore was on the scene and failed to intervene. That assertion is without merit. While the record does not reflect Bushore's exact proximity to Sharkey and Sawyer during the search, Defendants admit that Bushore was on the scene, that Bushore was aware that two female passersby were present, and that Bushore knew that it would be wrongful to conduct a strip search in the Motel 6 parking lot. A jury could reasonably find that Bushore had a realistic opportunity to intervene when Officer Sharkey commenced and continued his search of Sawyer. *See Abdullahi v. City of Madison,* 423 F.3d 763, 774 (7th Cir. 2005) ("this Court has made clear that" a failure to intervene claim "almost always implicate[s] questions of fact for the jury: 'Whether an officer had sufficient

time to intervene or was capable of preventing the harm caused by the other officer is generally an issue for the trier of fact unless, considering all the evidence, a reasonable jury *could not possibly conclude otherwise*.'") (quoting *Lanigan v. Vill. of E. Hazel Crest*, 110 F.3d 467, 478 (7th Cir. 1997)).

For the foregoing reasons, Defendants' motion for summary judgment on Sawyer's unreasonable search claim is denied.

February 8, 2011

_____
United States District Judge